UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| COLELITA MUHAMMAD, | ) CASE No.: 1:21-cv-01189 |
| Plaintiff, | ) |
| vs. | ) |
| AMERICAS SERVICING COMPANY.; EQUIFAX INFORMATION SERVICES, LLC., | ) **COMPLAINT** |
| Defendants. | ) |

Plaintiff, Colelita Muhammad (hereinafter "Plaintiff" or "Muhammad") alleges:

## PRELIMINARY STATEMENT

1. This is an action for damages arising from violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.* (hereinafter "FCRA").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

3. Venue is proper in this district 28 U.S.C. §1391(b).

## PARTIES

4. Plaintiff is a natural person who at all relevant times has resided in Williamson County, Texas.

5. Defendant America's Servicing Company ("ASC"). ASC is a business entity that offers mortgage lending, refinancing, calculations, foreclosure, and other financial services. ASC regularly conducts business within Texas with its principal place of business located at PO Box

10328 Des Moines, IA 50306. ASC regularly and in the ordinary course of business furnishes information to various consumer reporting agencies regarding ASC's transactions with consumers, and is therefore a "furnisher" of information as contemplated by the FCRA. 15 U.S.C. §§ 1681s-2(a) & (b).

6.      Defendant Equifax Information Services, LLC ("Equifax") is a business entity that regularly conducts business in Texas with its principal place of business as 1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f) and engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681 a(d), to third parties.

## FACTUAL STATEMENTS

7.      On a date better known by Defendants, ASC began servicing Plaintiff's mortgage bearing the account number #106110018**** (the "Account").

8.      On or about December 2016, the Account was closed and transferred to another loan servicer.

9.      After that point in time, Plaintiff was no longer obligated to make monthly payments on the Account to ASC, as the debt had been transferred, sold, purchased, refinanced, consolidated or otherwise acquired by another loan servicer.

10.     Despite this, ASC has been reporting to Equifax that Plaintiff's payment status is *currently* late by greater than 30 days. In fact, Plaintiff's Equifax credit reports indicate that the account was late 30-59 days past due as of June 7, 2020.

11.     The reporting of an account that is transferred or sold with a currently late status is inconsistent with the industry standard. To be accurate and complete, the status must be reported as transferred or sold.

12.     The payment status field within which ASC is reporting Plaintiff as currently late is a field that is specifically designed to be understood as the current status of the account. As such, the credit scoring algorithms specifically take this data field into account when calculating and generating a credit score. As a result, when a late status is being reported in the pay status field, even where the account has a zero balance or a zero monthly obligation, the credit scoring algorithm calculates the negative status as an active delinquency. This causes the credit score generated to be lower than it should be had the pay status been reported as closed consistent with the industry standard.

13.     A lower credit score hurts consumer creditworthiness because lenders have different tiers of risk, and a consumer with a lower credit score will often be placed into a lower tier. Thus, Plaintiff's creditors and prospective creditors are misled as a result of a lower credit score caused by ASC's erroneous payment status because the creditors make their credit lending decisions based substantially on the credit scores generated (in most instances).

14.     To address the incorrect status which was artificially lowering Plaintiff's credit score, Plaintiff sent a dispute letter to the credit bureaus, including Defendant Equifax and TransUnion, on or about July 2020.

15.     After receiving a dispute from Plaintiff concerning the erroneous information of the Account, Defendants Equifax and TransUnion forwarded Plaintiff's disputes on to ASC.

16.     Defendant ASC failed to conduct a reasonable investigation and continued allowing the reporting of an erroneous late payment status.

17.     As a result of Defendants' actions, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit. Plaintiff has also suffered embarrassment, humiliation, and

other emotional injuries as a result of errors on his credit report and credit worthiness which were inconsistent with how the industry standard instructs furnishers of information to report.

## COUNT I
## VIOLATION OF THE FAIR CREDIT REPORTING ACT
## BY ASC

18. Plaintiff repeats the allegations contained in the above paragraphs and incorporates them as if specifically set forth at length herein.

19. At all times pertinent hereto, ASC was a "person" as that term is used and defined under 15 U.S.C. § 1681a.

20. ASC willfully and negligently supplied Equifax with information about Plaintiff that was false, misleading, and inaccurate.

21. ASC willfully and negligently failed to mark its account as disputed by Plaintiff.

22. ASC willfully and negligently failed to conduct an investigation of the inaccurate information that Plaintiff disputed.

23. ASC willfully and negligently failed to report the results of its investigation to the relevant consumer reporting agencies.

24. ASC willfully and negligently failed to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies, concerning the inaccurate information disputed by Plaintiff.

25. ASC willfully and negligently continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to credit reporting agencies.

26. ASC willfully and negligently failed to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2(b).

27. As a direct and proximate cause of ASC's failure to perform its duties under the FCRA, Plaintiff has suffered injury to his credit worthiness and increased difficulty obtaining credit.

Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on her credit report and credit worthiness.

28. ASC's conduct, action and inaction were willful, rendering it liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

29. In the alternative, ASC was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant Plaintiff a judgment against ASC for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and attorney's fees.

### COUNT II
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### BY EQUIFAX

30. Plaintiff repeats, re-alleges, and reasserts the allegations contained in the paragraphs above and incorporates them as if specifically set forth at length herein.

31. Defendant Equifax prepared, compiled, issued, assembled, transferred, published and otherwise reproduced consumer reports regarding Plaintiff as that term is used and defined under 15 U.S.C. § 1681a.

32. Equifax negligently and willfully failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or more third parties pertaining to Plaintiff, in violation of 15 U.S.C. § 1681e(b).

33. After receiving Plaintiff's dispute highlighting the errors, Equifax negligently and willfully failed to conduct a reasonable investigation as required by 15 U.S.C. § 1681i.

34. As a direct and proximate cause of Equifax's failure to perform its duties under the FCRA, Plaintiff has suffered injury to credit worthiness and increased difficulty obtaining credit.

35. Plaintiff has also suffered embarrassment, humiliation, and other emotional injuries as a result of errors on credit report and credit worthiness.

36. Equifax's conduct, action and inaction were willful, rendering each liable for actual and statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant Plaintiff a judgment against Equifax for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and attorney's fees.

## JURY TRIAL DEMAND

37. Plaintiff demands a jury trial on all issues so triable.

Dated: December 31st, 2021

                                                        Respectfully Submitted,

                                                        /s/ *Daniel Zemel*
                                                        Daniel Zemel, Esq.
                                                        ZEMEL LAW, LLC
                                                        660 Broadway
                                                        Paterson, NJ 07514
                                                        Phone: (862) 227-3106
                                                        Fax: (973) 282-8603
                                                        dz@zemellawllc.com
                                                        Attorneys for Plaintiff